[S. F. No. 2034.   In Bank. — May 15, 1901.]

## BOARD OF RAILROAD COMMISSIONERS, etc., et al., Appellants, v. MARKET STREET RAILWAY COMPANY et al., Respondents.

RAILROAD COMMISSIONERS — JURISDICTION — STREET-RAILWAYS. — The board of railroad commissioners of the state of California have no jurisdiction over street-railways operated in a municipality. [Temple, J., dissenting.]

ID. — CONSTRUCTION OF CONSTITUTION — STREET-RAILWAY COMPANY NOT A "TRANSPORTATION COMPANY." — A street-railway company is not a "transportation company," within the meaning of section 22 of article XII of the constitution, defining the powers and duties of the board of railroad commissioners, which are intended to be confined to corporations carrying freight and passengers from one portion of the state to another, or from another state into this state, and not to include local street-railways carrying passengers only within the limits of a city. [Temple, J., dissenting.]

ID. — DOUBTFUL PROVISION OF CONSTITUTION — CONTEMPORANEOUS AND CONTINUED CONSTRUCTION BY LEGISLATURE. — Although the legislature cannot authoritatively fix the meaning of the constitution, yet, where the meaning of the constitution is doubtful, the contemporaneous and long-continued construction thereof by the legislature is entitled to the greatest deference, and may be supposed to reflect the same views of policy and modes of reasoning which prevailed among the framers of the constitution.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinions.

Tirey L. Ford, Attorney-General, George A. Sturtevant, Deputy Attorney-General, and N. Blackstock, for Appellants.

William F. Herrin, and John Garber, for Respondents.

COOPER, C.—This is an application by the board of railroad commissioners of the state of California for a writ of mandate to compel the defendant corporation to produce to the plaintiffs, and to permit plaintiffs to examine, the books, records, and papers of said corporation.   The court below refused the writ and ordered the action dismissed, and judgment was accordingly entered.   This appeal is from the judgment.

The question to be here determined is as to whether or not the defendant corporation is subject to the supervision of plaintiffs, under the provisions of an act of the legislature entitled "An act to organize and define the powers of the board of railroad commissioners," approved April 15, 1880.   (Stats. 1880, p. 45.) The constitution provides for and defines the duties and jurisdiction of the railroad commissioners.   (Const., art. XII, sec. 22.)   The language is: "The state shall be divided into three districts, as nearly  equal in population as practicable, in each of which one railroad commissioner shall be elected. . . . Said commissioners shall have the power, and it shall be their duty, to establish rates of charges for the transportation of passengers and freight by *railroad and other transportation companies.*"  Do the words, "*railroad and other transportation companies*," include a street-railway company in a municipality, engaged in the business of carrying passengers on street-railroad cars?   In order to correctly determine this question, we must look to the words used, the context, the object in view, and the evils that were intended to be remedied.   In this manner we should, if possible, arrive at the intention of the convention in using the words, and give to them the same meaning and effect as was intended by the people, through their representatives, in framing the constitution.

It is a matter of common knowledge, that among the evils, or supposed evils, under which the people of the state were suffering, and for which they demanded redress, was that of exorbitant and discriminating charges by railroad corporations engaged in transportation of freight and passengers.   The political agitation of the times resulted in calling a constitutional convention, and the people, through their representatives, framing the present constitution in 1879, which was afterwards, in the same year, adopted by the people, by the expression of their will at the ballot-box.   The constitution in no place mentions street-railroad corporations, although there were many such corporations in existence at the time it was framed.   The Civil Code of the state, at the time, in title III (secs. 454–491), contained many provisions in regard to "railroad corporations," and in title IV (secs. 797–511) treated of and provided for "street-railroad corporations." Those sections of the code so treating railroad corporations and street-railroad corporations under separate and distinct titles had long been a part of the law of the state.   Therefore we

must presume that the convention—in which there were many lawyers of ability—knew that the two classes of corporations had long been known by the legal profession, and treated by the people, through their legislatures, as separate and distinct,—the one being engaged in the commercial business of carrying freight and passengers over the quasi-public ways from one part of the state to another, the other in carrying passengers only in the larger municipalities of the state; the one obtaining its franchise from the state, the other from the municipal authorities of the town or city in which it was carrying on its business.   It is, therefore, a significant fact that no mention is made in the constitution of "street-railway corporations," and we cannot resist the conclusion that such omission was not unintentional.   There was no public demand for the regulation of fares of street-railways in municipalities. The convention consisted of delegates chosen from all parts of the state.

In the section of the constitution quoted, the power is given to establish rates for *passengers and freight*.   And it is further provided that the "rates of fares and freights" established by the said commission shall be conclusively deemed just and reasonable.   It is further provided, in section 23 of the same article, that the state shall be divided into three "railroad districts," naming the counties in each district.   This is consistent with the idea that the entire people of the state were interested in the great corporations engaged in the carrying of freight and passengers from one portion of the state to another, or from sister states into or through the state.   It is inconsistent with the idea that the entire people of the state were interested in the rates for carrying passengers within the corporate limits of a town or municipality.

It was the policy of the constitution that such matters as concerned the inhabitants of a particular subdivision of the state or county should be governed, as far as practicable, by local laws.   That the people of the state, through their representatives, understood the said sections of the constitution not to apply to street-railroad corporations, is apparent from the contemporaneous construction given to them by the legislature in the act providing for the organization and defining the powers of the railroad commission, approved April 15, 1880, before cited.   This act was passed for the purpose of providing machinery to carry into effect the constitutional provision

creating the railroad commission. It was passed at the first meeting of the legislature after the constitution was adopted, and by the representatives of the people who had been elected for the purpose of providing for carrying it into effect. In this act it is provided, in section 14: "The term 'transportation companies' shall be deemed to mean and include,—1. All companies owning and operating railroads (other than street-railroads) within this state; 2. All companies owning and operating steamships engaged in the transportation of freight or passengers from and to ports within this state; 3. All companies owning and operating steamboats used in transporting freight or passengers upon the rivers or inland waters of this state."

It will thus be seen that street-railroads are expressly excepted from the act. While the interpretation given to the act by the legislature is not controlling upon this court as to the meaning of a provision of the constitution, yet, where it is doubtful, the courts may, very properly, look to the contemporaneous interpretation given such provision, either by the legislature or the courts. Particularly is this the case where that interpretation has been upon the statute-books unchallenged for twenty years. The interpretation placed upon the constitution by the legislature of 1880 has ever since been acquiesced in, and legislation has been in accord with such interpretation. Thus the legislature, by an act approved March 23, 1893 (Stats. 1893, p. 288), made provision, among other things, for granting of franchises to operate railroads along public streets and highways by the board of supervisors or common council, only after public notice by advertising in one or more daily newspapers, and then to the highest bidder. Again, on March 13, 1897 (Stats. 1897, p. 135), it was enacted that a franchise to construct or operate street-railroads, except steam-railroads, upon any public street or highway shall be granted by the governing or legislative body of the city or town, only after public notice by advertising as provided in said act, to the highest bidder, for a stated per cent of the gross annual receipts, which shall in no case be less than three per cent of such receipts. Thus under the interpretation given to the act, and as it always appears to have been interpreted by the legislature, franchises for street-railroads have been granted and rights have accrued.

In the case of *Stuart* v. *Laird,* 1 Cranch, 299, the constitu-

tional objection was made that the judges of the supreme court had no right to sit as circuit judges, not being appointed as such, nor having commissions for that purpose. In passing upon the question, the supreme court of the United States said: "To this objection, which is of recent date, it is sufficient to observe that practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has indeed fixed the construction. It is a contemporary interpretation of the most forcible nature. This practical exposition is too strong and obstinate to be shaken or controlled. Of course the question is at rest, and ought not now to be disturbed."

In Endlich on the Interpretation of Statutes (sec. 527), it is said: "The greatest deference is shown by the courts to the interpretation put upon the constitution by the legislature in the enactment of laws and other practical application of constitutional provisions to the legislative business, when that interpretation has had the *silent* acquiescence of the people, including the legal profession and the judiciary, and especially when injurious results would follow the disturbing of it. The deference due to such legislative exposition is said to be all the more signal when the latter is made almost contemporaneously with the establishment of the constitution, and may be supposed to result from the same views of policy and modes of reasoning that prevailed among the framers of the instrument thus expounded."

This court, in *Will of Warfield*, 22 Cal. 71,[1] said: "Courts feel themselves constrained to uphold, where it is possible, contemporaneous interpretation of statutes, under which interpretation rights of property have for many years been acquired."

In the case of *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 733, in speaking of an act of the legislature as interpreting a provision of the constitution of Colorado, the court said: "The act was passed by the first legislature that assembled after the adoption of the constitution, and has been allowed to remain upon the statute-book to the present time. It must, therefore, be considered as a contemporary interpretation entitled to much weight."

But, independent of the contemporaneous interpretation so given to the constitution by the legislature, we think the inter-

---

[1] 83 Am. Dec. 49–58.

pretation correct, and that the words "railroad company" were not intended to mean street-railway. In the ordinary acceptation of the term "railroad company," or "railroad," it is not understood to mean a street-railway engaged in the business of carrying passengers the entire distance, or any part of the distance, over which the road runs, for one and the same fare.

In the late case of *Ferguson* v. *Sherman*, 116 Cal. 169, this court had under consideration a provision of the constitution of Kansas exempting from statutory liability the stockholders of *railroad corporations*, and it was held that the provision did not extend to stockholders of the "Electric Rapid Transit Company," which was a street-railway corporation. In the opinion it is said: "It is not so easy to believe that the purpose of that constitution was to exempt from liability the stockholders of street-railways, which are designed merely to facilitate travel and communication upon the public highways of a municipality. . . . In this state, the difficulty is much relieved by the distinction which our codes make between railroad corporations proper and street-railroad corporations. This consideration, however, is entitled to weight; . . . and we therefore conclude that the provision of the constitution of Kansas was not designed to apply to stockholders of street-railroad corporations."

In *Gyger* v. *West Philadelphia etc. Ry. Co.*, 136 Pa. St. 96, it was held by the supreme court of Pennsylvania that section 4 of article XVII of the constitution of the state, providing that "no railroad, canal, or other corporation . . . shall consolidate . . . with, or lease or purchase the works or franchises of, or in any way control, any other railroad or canal corporation owning . . . a parallel or competing line," is not applicable to street-railway companies. In the opinion it is said: "It is perfectly clear that the convention did not regard the word 'railroad' as synonymous with 'railway' or 'street passenger railway,' when this section of the article was framed."

In *Louisville etc. R. R. Co.* v. *Louisville City R. R. Co.*, 3 Duvall, 175, it was held by the court of appeals of Kentucky that a provision in a railroad charter, that no other railroad should be constructed between two named points in a city, did not prohibit the construction of street-railways. In the opinion the court said: "A railroad is for the use of the universal public, in the transportation of all persons, baggage and other freight; a street-railway is dedicated to the more limited use

of the local public, for the more transient transportation of persons only, and within the limits of the city.   In the technical sense, therefore, a street-railway is not a railroad."

In *Bloxham* v. *Consumers' Electric Light etc. Co.*, 36 Fla. 539,[2] it is said: "The word 'railroad,' as generally used, applies to commercial railways engaged in the transportation of freight and passengers for long distances, and, as a general rule, having steam-engines for motive power, and making stops at regular stations for the receipt and discharge of freight and passengers.   The term 'street-railroad' applies only to such roads, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public are not excluded from the street as a public highway, which runs at a moderate rate of speed, compared with commercial railroads, which carries no freight, but only passengers from one part of a thickly populated district to another, in a town or city and its suburbs."

In *Fidelity Loan etc. Co.* v. *Douglas*, 104 Iowa, 536, a very late case, it is said: "The words 'railroad' and 'railway' may undoubtedly be so used as to mean a street-railway, but by popular usage, when used without qualifying words, they are understood to refer to commercial railways, the word 'street' being almost invariably used in connection with 'railway' to designate a street-railway."

The same has been substantially held in other states, in the discussion of the various uses of the words "railroad" and "street-railway."   (*Funk* v. *St. Paul City Ry. Co.*, 61 Minn. 435;[3] *Sears* v. *Marshalltown Street Ry. Co.*, 65 Iowa, 742; *Front Street Cable Ry. Co.* v. *Johnson*, 2 Wash. 112.)   And the same rule has been laid down in the Federal courts.   (*Manhattan Trust Co.* v. *Sioux City Cable Ry. Co.*, 68 Fed. Rep. 82; *Massachusetts Loan etc. Co.* v. *Hamilton*, 88 Fed. Rep. 588; 1 Foote and Everett on the Law of Incorporated Companies operated under Municipal Franchises, p. 668, note 5.)

It is claimed that the words "other transportation companies" include street-railway companies.   We think by reference to the context, and to other sections of the same article, it clearly appears that the words refer to transportation companies engaged in the business of common carriers of freight and passengers.   The section refers to and speaks of "the rates of fares and freight" established by the commission.

[2] 51 Am. St. Rep. 44.          [3] 52 Am. St. Rep. 608.

And in section 21 of the same article it is provided: "No discrimination in charges or facilities for transportation shall be made by any railroad or other transportation company between places, or persons, or in the facilities for the transportation of the same classes of freight or passengers, within this state, or coming from or going to any other state." In section 20, reference is made to the consequences of lowering rates "for transportation of passengers or freight from one point to another." Companies engaged in draying, running freight-wagons, delivery-wagons, delivering parcels, teaming, or running elevators, are engaged in the business of "transportation"; but it surely could not be contended that they are subject to the jurisdiction of the "railroad commission." The people of the state would not have agreed to pay the salaries and expenses of the railroad commissioners, selected from different geographical sections of the state, for the purpose of regulating the charges of the "United Carriage Company" of San Francisco. Yet it is a transportation company. It clearly is not a transportation company whose "fares and freights" are subject to regulation by the railroad commissioners of the state.

It follows that the judgment should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.     Van Dyke, J.,     Henshaw, J.,     Harrison, J., McFarland, J.,     Garoutte, J.,     Beatty, C. J.

TEMPLE, J., dissenting.—I dissent.

This is an appeal from a judgment refusing a mandate to compel the corporate defendant to produce, for the inspection of the plaintiffs, its books, records, and other papers. The plaintiffs claim the right to inspect said records, under their authority as railroad commissioners, conferred by section 22 of article XII of the state constitution. They do not contend that any such power is given by the act of the legislature defining the powers of the board, passed April 15, 1880.

Section 22 of article XII provides for the formation of the districts, each to elect one commissioner, the commissioners to be qualified electors of the district, and not interested in any railroad corporation *or other* transportation company; and then, said commissioners shall have the power, and it shall be their duty, to establish rates of charges for the transportation

of passengers and freight by railroad or other transportation companies, and publish the same, from time to time, with such changes as they may make; to examine the books, records, and papers of all railroad and other transportation companies, and for this purpose they shall have power to issue subpœnas and all other necessary process; to hear and determine complaints against railroad and other transportation companies, to send for persons and papers, to administer oaths, take testimony, and punish for contempt of their orders and processes, in the same manner and to the same extent as courts of record, and enforce their decisions and correct abuses through the medium of the courts. Said commissioners shall prescribe a uniform system of accounts to be kept by all such corporations and companies. Any railroad or transportation company which shall fail or refuse to conform to such rates as shall be established by such commissioners, or shall charge rates in excess thereof, or shall fail to keep their accounts in accordance with the system prescribed by the commission, shall be fined, etc. It was further declared that the legislature may confer such further power on the commissioners as shall be necessary to enable them to perform the duties enjoined upon them by the constitution. .

The question here is, whether the jurisdiction of the commissioners, as thus defined, extends to street-railroads. That the phrase, "railroad and other transportation companies," does include street-railroads, in its natural and most obvious sense, and also by common usage of the words, is not and cannot be denied. The phrase is repeated five times in the section, and nowhere is there a suggestion that anything comprehended in the phrase is to be excluded; and the constant repetition of the more extensive accompanying term, as though fearing and desiring to forestall an adverse construction which might limit the usefulness of the commission, is significant of a determination that there should be no doubt as to the extent of the power of the board.

The five preceding sections of the article are upon the same general subject, and each contains the same or an equivalent phrase. The slight change in verbiage, while still showing an effort to comprehend all engaged in the transportation business, makes that effort still more evident.

In section 17, all railroad, canal, and other transportation companies are declared to be common carriers, and subject to

legislative control. Certainly, this may well apply to street-railroads.

Section 18 prohibits the officers and employees of railroads and canal companies from being interested personally in certain affairs of such companies. No reason is perceivable why this should not apply to street-railroads. It includes them as railroads.

Section 19 prohibits free passes to certain officials by railroads, or other transportation companies. It has always been supposed that this provision applies to street-railroads.

Section 20 declares that no railroad company, or other common carrier, shall combine, etc. The phrase, "other common carrier," is used instead of "other transportation companies," and is a phrase of similiar import and as comprehensive.

In section 21 it is provided that no discrimination shall be made by "any railroad or other transportation company." The phrase, as already stated, clearly includes, within the plain and unambiguous meaning of the words, "street-railroads." No reason has been suggested why it should not be held to apply to them. This section is expressly referred to in section 22, and the board is expressly enjoined to enforce its provisions. If it applies to street-railroads, the power of the commissioners must be held to extend to them.

And so of the use of the words in all of these sections. In the nature of things, some of the rules laid down could not apply to all such companies,—such, for instance, as the right given to railroad companies to make connections in certain cases, as provided in section 17. Such is the case with nearly every general law applicable to a variety of subjects. Particular provisions apply only to matters which come within their special scope; and that some provisions cannot apply to all, furnishes no argument for the contention that the entire law is limited to these special matters to which they apply. Street-railroads come clearly within the usual and ordinary import of the terms used. There can be no doubt as to the meaning of the words, and the constitution will be searched in vain for a qualification or limitation of the terms, "If the text be clear and distinct, no restriction upon its plain and obvious import ought to be admitted, unless the inference be irresistible." (*Martin* v. *Hunter's Lessees*, 1 Wheat. 304.) Street-railroads are not specially mentioned, because included in the general language. If it were not intended to include them, they should

have been mentioned, as they were in the act of 1880. (Stats. 1880, p. 45.) Written laws will lose their usefulness, if unequivocal terms in them can be limited to what courts may think ought to have been included.

It is said that to give the words, "and other transportation companies," any meaning whatever will lead to absurd consequences, and one must limit the term, so far as railroads are concerned, to a particular species of them,—to wit, what counsel call commercial railroads,—and it is said if these words mean anything, there was no occasion to mention railroads at all, as they are also transportation companies. By what rule of construction are these words repeated in section 22 five times, and in article XII many times more, to have no effect whatever? If the words serve no other purpose, they *demonstrate* that the jurisdiction of the commission was *not* to be confined to commercial railroads, although they were thought to be the principal offenders. Their use should conclude this question. Such repetitions are quite common in statutes, going from the less to the more comprehensive. The words, "lands, tenements, and hereditaments," are often used together, although the last includes both the others.

To give these words any meaning, it is suggested, will bring under the control of the commission, elevators,. hacks, etc. If that be so, it will be time enough to so construe the law when a case of that kind shall arise. The question now is as to street-railroads. Elevators make no charges, and hacks have always been under municipal supervision, and have not generally been owned by companies. There are reasons why the commission should not control them, which do not apply to street-railroads. Telegraph companies do not, in their usual acceptation of the term, carry freight or passengers. Perhaps the terms may be limited to companies which were popularly considered transportation companies when the constitution was adopted. Street-railroad companies were then, as now, so considered, and up to that time the limit of charges on street-railroads had been fixed by the legislature, and not by the municipalities.

The constant repetition of the words, " other transportation companies," in connection with the word " railroad," takes all force from the argument, that in the popular usage the word " railroad " refers only to commercial railroads; and here, again, the use and necessity of the words are shown. Upon

this subject it is only necessary to make an extract from a well-considered opinion by Judge Hawley (*Massachusetts Loan etc. Co.* v. *Hamilton*, 88 Fed. Rep. 588): " The words 'railroad' and 'railway' are synonymous, and, under all ordinary circumstances, they are to be treated as without distinction of meaning. As said by Justice Green in *Gyger* v. *West Philadelphia etc. Ry. Co.*, 136 Pa. St. 96, 'When either one or the other of these words are used in a statute, and the context requires that a particular kind of road is intended, that kind of road will be held to be the subject of the statutory provisions; but if the context contains no such direction, and either of the words is used in describing the subject-matter, the statute will be held applicable to everything which is embraced within the general sense of the words used,' " etc. (Citing authorities.)

But if the provision were conceded to be unreasonable, and to lead to absurd or unjust consequences, still, if it is clear, unambiguous, and its terms are not capable of some other meaning, and no suggestion of a limitation can be found in the context, we could not set up our own ideas of policy against the clearly expressed sovereign will.

The argument here is, simply, that the only meaning which can be given to the language cannot be allowed, because it leads to absurd results. Cooley says, in his work on Constitutional Limitations (p. 87): "Such provisions, when free from doubt, must receive the same construction as any other. I do not say, however, that if a clause should be found in a constitution which should appear at first blush to demand a construction leading to monstrous and absurd consequences, it might not be the duty of the court to question and cross-question such clause closely, with a view to discover in it, if possible, some other meaning more consistent with the general purposes and aim of these instruments."

The language found in constitutional provisions is naturally more general than that used in statutes. The constitution only creates a government by outlines. It calls into being governmental departments, declares their functions in the most general terms, and in the same way imposes restrictions. The legislature is expected to supply details and to put the scheme into operation. A statute providing for the incorporation of railroad companies, or providing rules for running railroads, might well be expected to deal separately with steam and with street railroads. In regard to these matters

there are essential differences, which might suggest that when treating specifically of street-railroads they would be named as such. I am not contending that, as to such matters, general terms, even when not ambiguous, may not be limited by the context. Doubtless, even a constitutional provision could be so limited. Here, not only is there nothing in the context from which a limitation can be inferred, but extraordinary pains have been taken to prevent such a construction, by the careful iteration of the enlarging phrase, whenever the word "railroad" is so used that a restriction could be asserted.

But it is said that section 22 of article XII has received a practical and contemporaneous construction by the act to organize and define the powers of the board of railroad commissioners, passed April 15, 1880. The act provides for the organization of the board, and that its members and employees, when in performance of their official duties, shall be carried free upon all railroads, steamboats, etc., and in all vehicles employed in or by any railroad or other transportation company, etc.; and, in section 14, that the term "transportation companies" shall be deemed to mean and include,—"1. All other companies owning and operating railroads (other than street-railroads) within this state."

Contemporaneous construction can have no weight whatever where there is no doubt or ambiguity in the terms used, and none arises by implication from the context. This is clearly laid down by Cooley. (Constitutional Limitations, pp. 80 et seq.) The authorities are carefully collected and elaborately discussed in *State* v. *Wrightson,* 56 N. J. L. 126. It would serve no useful purpose to go over that subject, especially as I think there has been no contemporaneous or practical construction of this constitutional provision.

If the declaration that the phrase, "other transportation companies," includes all railroads except street-railroads, was intended as a declaration of the meaning of the constitution, and not as a restriction upon the operation of the statute, then it was a usurpation of judicial powers. We cannot attribute such motive to the legislature, especially as the presumption is all but conclusive that the motive was merely to limit the operation of the law. There was reason for this, *if the phrase* in the constitution would otherwise have been construed to include street-railroads. If the contrary was the natural con-

CXXXII. Cal.—44

struction, there would have been no occasion for this express restriction as to the operation of the statute. This limitation has its excuse, if it was merely intended to limit the right to free passes to railroads, other than street-railroads.

But the probability is, that the legislature did intend to limit the action of the board by this provision. Still, the presumption is conclusive, as I think, that it was not an attempt to declare the meaning of the constitutional provision. Section 22 defines with minuteness many powers which are thereby conferred upon the commissioners. No one would contend that the legislature could limit these express grants of power. The section further declares that the legislature "may confer such further powers on the commissioners as shall be necessary to enable them to perform the duties enjoined on them in this and the foregoing section." All that could be justly concluded, then, is, that the legislature restricted the additional powers by them granted the commissioners, to transportation companies, other than street-railroads. This, perhaps, they could do; more, they certainly could not. This would not be a construction of the constitution, unless the implication would be, that, but for the provision, street-railroads would be included.

But for another reason the act cannot be deemed a *practical* construction of section 22. The legislation did not depend for its validity upon the supposed meaning attributed to the language of section 22. If the language of the statute merely limited the operation of the statute, operating under it could not amount to a practical construction. To illustrate: In *Stuart* v. *Laird*, 1 Cranch, 299, the right of the justices of the supreme court of the United States to sit as circuit judges was called in question. An act of Congress expressly authorized them so to do, and for a series of years the circuit court had been so held. The constitution was silent upon the subject. The court treated the question as though it was, simply, whether the justices should be specially appointed and commissioned as circuit judges. The practical construction here consisted of the fact, that if the contention were sustained the practice for years had been illegal, and many judgments of the circuit courts were void. No such consequence would follow here. Whichever construction is adopted, the validity of no act of the commissioners will be affected. I think a similar comparison could be made with every case cited by respondents upon this point.