[Civ. No. 3079. Fifth Dist. Nov. 24, 1976.]

ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY, Petitioner, v.
DIVISION OF INDUSTRIAL SAFETY, Respondent.

**COUNSEL**

Matthew H. Witteman and Jeffrey J. Lyon for Petitioner.

Evelle J. Younger, Attorney General, and Carol Hunter, Deputy Attorney General, for Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—By these proceedings petitioner, Atchison, Topeka and Santa Fe Railway Company, an interstate rail carrier, seeks by way of extraordinary relief (see Lab. Code, § 6308) to annul a special order of the Division of Industrial Safety of the State of California (hereinafter "Division") which, as finally adopted, ordered petitioner to undertake an employee training program. The order provided: "When the nature of work performed by an employee in a hazardous location cannot be accomplished without training in the meaning of rules, regulations, and orders, the employer shall advise the employees of the meaning and consequences of failure to obey rules, regulations, and orders with sufficient time for their comprehension. The training shall include providing a thorough understanding of railroad operating

warning signals such as clearing the right of way of employees working on or about the track."

Petitioner challenges the validity of the order on the ground that the Division lacks jurisdiction to make the order because (1) the Federal Railroad Safety Act has preempted the field of interstate railroad workers' safety and (2) as between state agencies the authority over nonshop railroad employee safety is vested in the Public Utilities Commission.

Though it appears that there may be merit to the federal preemption contention (see Federal Railroad Safety Act (45 U.S.C.A. §§ 421, 431-441; *National Ass'n. of Regulatory Util. Com'rs.* v. *Coleman* (M.D.Pa. 1975) 399 F.Supp. 1275, 1278-1279; *Donelon* v. *New Orleans Terminal Company* (5th Cir. 1973) 474 F.2d 1108, 1112 (cert. den. 414 U.S. 855 [38 L.Ed.2d 105, 94 S.Ct. 157]); 49 C.F.R. § 217.11), we do not reach or decide that question because we have concluded that the Division was without authority to issue the challenged order.[1]

After appropriate notice and proceedings before the Division, the special order was issued as a result of a fatal injury to one of petitioner's employees. The employee was working along petitioner's tracks just south of where those tracks intersect Lacey Boulevard in the City of Hanford, California. The employee failed to remove himself from the tracks as a train traveling between 45 and 50 miles an hour approached him sounding its whistle warning signal to clear the track, which the employee did not heed. The fatality occurred at or near quitting time on the employee's first day of employment as a track man with petitioner.

Labor Code section 6307, now part of the California Occupational Safety and Health Act of 1973, sets forth the broad powers of the Division: "The division has the power, jurisdiction, and supervision over every employment and place of employment in this state, which is necessary to adequately enforce and administer all laws and lawful standards and orders, or special orders requiring such employment and place of employment to be safe, and requiring the protection of the life,

---

[1]It would also be more appropriate to adjudicate this issue in proceedings in which the appropriate federal agency is a party.

safety, and health of every employee in such employment or place of employment." Labor Code section 6303, subdivision (a), excepts from that jurisdiction any place of employment "the safety jurisdiction over which is vested by law in any state or federal agency other than the division."

The plenary power of the Legislature to confer authority upon the Public Utilities Commission (successor to the Railroad Commission) has its genesis in article XII, section 23, of the California Constitution, passed in 1911.[2]

In 1915, pursuant to the authority contained in article XII, section 23, of the Constitution the Legislature passed legislation requiring the commission to investigate all accidents on public utility property or connected with the operation of a public utility and empowering the commission to make special orders or rules designed to promote and safeguard the health and safety of employees, passengers or the public. These provisions have been carried forward in essentially the identical wording and now appear in Public Utilities Code sections 315, 761 and 768, among others.

Thus there were conflicting and overlapping grants of jurisdiction by the Legislature to the Industrial Accident Commission (now Workers' Compensation Appeals Board) and the Public Utilities Commission with regard to railroad workers' safety.

In 1917 the Legislature passed legislation carrying the following heading: "An act establishing and defining the jurisdiction of the industrial accident commission of the State of California and of the railroad commission of the State of California over the safety of employees of public utilities." (Stats. 1917, ch. 201, p. 296.) The provisions of that act have been carried forward in essentially the same wording and are contained in division 5 (Safety in Employment), part 2

---

[2]Article XII, section 23, of the California Constitution provided in part: "The Railroad Commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities, in the State of California, and to fix the rates to be charged for commodities furnished, or services rendered by public utilities as shall be conferred upon it by the Legislature, and the right of the Legislature to confer powers upon the Railroad Commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution."

(Safeguards on Railroads), chapter 1 (Jurisdiction) of the Labor Code, section 6800 et seq. Section 6800 provides as follows:

"The division has jurisdiction over:

"(a) The safety of employees of steam railroads employed in shops devoted to the construction or repair of railroad equipment.

"(b) The safety of employees of electric interurban or street railroads, employed in the generation, transmission or distribution of electric energy, or in shops devoted to the repair of railroad equipment, or in any nonpublic utility operation of such railroads.

"(c) The safety of employees of all other public utilities as defined in the Public Utilities Act."

The enactment of the California Occupational Safety and Health Act of 1973 left undisturbed section 6800, subdivisions (a), (b) and (c), as it did Labor Code section 6307, dealing with the Division's jurisdiction in general. We concur with the court's conclusion in the recent case of *Division of Industrial Safety* v. *Municipal Court* (1976) 61 Cal.App.3d 696, 701 (hg. den.) [132 Cal.Rptr. 573], wherein the court held that the specific provisions of section 6800 must be held to control over the general provisions of the California Occupational Safety and Health Act of 1973, including Labor Code section 6307. It is therefore clear that by the specific terms of Labor Code section 6800, subdivision (a), the Division has no jurisdiction over working conditions of nonshop employees of "steam railroads."

■ The crucial question therefore is whether petitioner comes within the meaning of "steam railroad" in subdivision (a) of section 6800. Steam has, of course, long since ceased to be the motive power for long-line railroads operating in California. However, since the wording was placed in the statute in 1917, the term must be interpreted in light of the usage of that phrase during that era. A review of the cases and statutes during that period makes evident that the term "steam railroad" was synonymous with the kind of railroad petitioner represents, that is, a long-distance overland railroad as distinguished from a street or electric interurban railroad. (See *San Francisco etc. Ry. Co.* v. *Scott* (1904) 142 Cal. 222 [75 P. 575]; *Railroad Comm'rs.* v. *Market St. Ry. Co.* (1901) 132 Cal. 677 [64 P. 1065]; *Russ & Sons Co.* v. *Crichton* (1897) 117 Cal. 695 [49 P. 1043]; *People* v. *Craycroft* (1896) 111 Cal. 544 [44 P. 463]; *Huntington*

v. *Curry* (1910) 14 Cal.App. 468 [112 P. 583].) The statutes likewise provide some insight into the meaning of the term "steam railroad" and indicate a legislative intent to prevent the overlapping of street railroads and steam railroads. For example, since at least the turn of the century there has been one set of statutes for street railroads (formerly Civ. Code, §§ 497-511 and presently at Pub. Util. Code, §§ 7801-7818) and another set of statutes for railroad corporations (formerly Civ. Code, §§ 454-459 and presently at Pub. Util. Code, §§ 7501-7676). With regard to street railroads, Public Utilities Code section 7804, originally adopted by the Legislature in its 1869-1870 session (as Civ. Code, § 497), requires that "[p]ermission shall not be granted to propel cars upon such tracks otherwise than by electricity or by wire ropes running under the streets and moved by stationary engines except as provided in Section 7813." Labor Code section 6800 itself makes the same distinction by referring to steam railroads in subdivision (a) and electric interurban or street railroads in subdivision (b).

Finally, in *Division of Industrial Safety* v. *Municipal Court, supra,* 61 Cal.App.3d at page 702, the court came to the same conclusion. It held that the term "steam railroad" "must be construed to mean transcontinental and similar long-line railroads," in that the term is used generically in contradistinction to street and interurban railroads and not in reference to the mode of propulsion.

█ It is concluded that the Division has jurisdiction over petitioner's shop employees only. As between the Division and the Public Utilities Commission, the Public Utilities Commission has safety jurisdiction over all other of petitioner's employees. Since the special order now under consideration refers to the training of employees who are nonshop employees, the Division was without jurisdiction to issue it. The order is annulled.

Franson, J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.