[Civ. No. 48150. First Dist., Div. Four. Oct. 2, 1980.]

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,
Petitioner, v.
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH,
Respondent.

**COUNSEL**

Malcolm Barrett, Thomas Jackson and Sherwood Wakeman for Petitioner.

John W. Hawkes and Michael D. Mason for Respondent.

Janice E. Kerr, Hector Anninos and Robert Cagen as Amici Curiae.

OPINION

POCHÉ, J.—Petitioner, San Francisco Bay Area Rapid Transit District (BART) seeks mandamus to annul a special order of the Division of Occupational Safety and Health (Division) requiring modification of fire hose outlets in the Transbay Tube. We conclude that Labor Code section 6800, subdivision (b), confers jurisdiction on the Division over the safety of BART employees but only with respect to activities and locations mentioned in that statute, no one of which is involved in the challenged order. Accordingly, we direct the Division to vacate its order.

On January 17, 1979, a fire occurred aboard a BART train operating in BART's Transbay Tube. Thereafter the Public Utilities Commission (PUC) conducted hearings and issued safety orders which resulted first in the closing and then in the resumption of service subject to certain safety requirements. After its own investigation the Division issued a special order requiring outlets for fire hoses to be extended into the gallery between tunnels within the Transbay Tube. In the administrative appeals process that followed, BART unsuccessfully contested the Division's jurisdiction to issue this special order.

This petition followed. We issued an alternative writ and invited the PUC to appear as amicus.

■ It is settled that an order of the Division may be reviewed by mandamus in this court in the first instance. (Lab. Code, § 6308; see *Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 469 [158 Cal.Rptr. 882, 600 P.2d 1339].)

■ With respect to the jurisdiction of the Division, the centerpoint is Labor Code section 6800 which grants the Division limited jurisdiction over certain employees of railroads, electric interurban or street railroads and certain public utilities. It provides: "The division has jurisdiction over:

"(a) The safety and health of railroad employees employed in offices and in shops devoted to the construction, maintenance or repair of railroad equipment, and all other railroad employees with respect to occupational health, including, but not limited to, air contaminants, noise, sanitation and availability of drinking water.

"(b)  The safety of employees of electric interurban or street railroads, employed in the generation, transmission or distribution of electric energy, or in shops devoted to the repair of railroad equipment, or in any nonpublic utility operation of such railroads.

"(c)  The safety of employees of all other public utilities as defined in the Public Utilities Act."

Focusing on subdivision (b) and on BART's admission that its trains are run by electric power and operate on rails between urban areas, the inescapable conclusion is that BART operates an "electric interurban railroad" as that term is used in section 6800, subdivision (b). BART's contention that it is a "rapid transit district" may be accurate but no persuasive argument has been offered that a rapid transit district cannot run an electric interurban railroad.

Although we hold that BART operates an "electric interurban railroad," we also conclude that the order here is not one which may be made under subdivision (b), which confers jurisdiction on the Division over the safety of only those employees of electric interurban railroads who are "employed in the generation, transmission or distribution of electric energy, or in shops devoted to the repair of railroad equipment, or in any nonpublic utility operation of such railroads." The order for safety equipment in the Transbay Tube involves none of these special circumstances.

The Division argues that the words "nonpublic utility operation" refer to a utility's operations which are not open to or directed toward the public. That interpretation ignores the word "utility," contrary to the fundamental rule that any construction should be avoided which implies that the Legislature employed unnecessary words in a statute. (*Prager v. Israel* (1940) 15 Cal.2d 89, 93 [98 P.2d 729].) Instead, the term "nonpublic utility operation" has a clear meaning derived from the term "public utility," the essential feature of which is that it is not confined to privileged individuals but is open to the public generally. A well established line of authority recognizes that a utility may reserve for private purposes a portion of its service not already dedicated to a public use. (*Marin Water & Power Co. v. Town of Sausalito* (1914) 168 Cal. 587, 596 [143 P. 767]; *Allen v. Railroad Commission* (1918) 179 Cal. 68, 82 [175 P. 466, 8 A.L.R. 249]; *Lamb v. Calif. Water & Tel. Co.* (1942) 21 Cal.2d 33, 40 [129 P.2d 371].) As used in section 6800, subdivision (b), "nonpublic utility operation" is a term of special meaning referring to those operations of an electric interurban railroad which

are not dedicated to unrestricted public use. Because BART is entirely devoted to the public use, it is not involved in any "nonpublic utility operation" and therefore no jurisdiction is granted by section 6800, subdivision (b) to issue the order involved here.

■ Because we agree with the court's conclusion in *Division of Industrial Safety* v. *Municipal Court* (1976) 61 Cal.App.3d 696, 701 [132 Cal.Rptr. 573] (hg. den.) that the specific provisions of section 6800 must be held to control over the general provisions of the California Occupational Safety and Health Act of 1973 (including Lab. Code, § 6307), it is unnecessary to explore the arguments advanced by the Division and by the PUC, as amicus curiae, that concurrent jurisdiction of these two entities exists under section 6307. (See also, *Atchison, T. & S. F. Ry. Co.* v. *Division of Industrial Safety* (1976) 64 Cal.App.3d 188, 192 [134 Cal.Rptr. 274].)

Similarly, since it is clear from the language of section 6800* that the subdivisions are mutually exclusive, it is unnecessary to analyze the application of subdivisions (a) and (c) to the instant order.

■ We conclude that section 6800 does not vest the Division with jurisdiction to issue the special order requiring BART to modify its fire hose outlets in its Transbay Tube. This conclusion does not disturb the authority of the Public Utilities Commission to issue such orders in the proper exercise of its own jurisdiction.

Let a peremptory writ of mandate issue, directing respondent Division to set aside its order.

Rattigan, Acting P. J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 10, 1980. Bird, C. J., Tobriner, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Section 6800 provides: "The division has jurisdiction over:

"(a)   The safety and health of railroad employees employed in offices and in shops devoted to the construction, maintenance or repair of railroad equipment, and all other railroad employees with respect to occupational health, including, but not limited to, air contaminants, noise, sanitation and availability of drinking water.

"(b)   The safety of employees of electric interurban or street railroads, employed in the generation, transmission or distribution of electric energy, or in shops devoted to the repair of railroad equipment, or in any nonpublic utility operation of such railroads.

"(c)   The safety of employees of all other public utilities as defined in the Public Utilities Act."