## The People on the relation of Michael Kennedy v. Paul Gies, County Treasurer of Wayne County.

*Constitutional law: Board of auditors of Wayne county: Compensation: Salary.* The statute (*3. Sess. L. 1871, p. 155*), fixing the salary of the county auditors of Wayne county, "which shall be in full for all services, and expenses, and traveling fees, in attending upon the duties of the office," and making it a misdemeanor for any auditor to receive any "further or other compensation" therefor, is not void under the provisions of the constitution (*Art. X., § 10*), giving to the board of auditors of said county "the exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against," the county, subject to no appeal.

*Constitutional construction: Implied qualifications.* Constitutions as well as statutes are to be construed in the light of previous history and surrounding circumstances; and their language is not to be measured by mathematical rules merely, but is subject, in the nature of things, to numerous implied exceptions or qualifications.

*Construction of constitution: County auditors: Compensation.* This provision of the constitution does not, and was never intended to, confer upon the board of auditors the exclusive power to fix the compensation for the services of its own members, and to adjust and allow *their own* claims.

It refers only to "claims" *presented to them* for allowance against the county, which they, in behalf of the county and for the protection of the public interests, are expected fairly to examine and scrutinize, and *not* to claims presented *by themselves* and *to themselves*, for services which they claim to have performed; in reference to which, their own interests are directly opposed to the interests of the public.

Any other construction would confer upon them judicial power to determine finally and without review, *their own cause*, which is so opposed to the spirit of our constitution and the policy of our government that the intent to confer

such a power will not be admitted, unless granted in language so clear as to exclude any other reasonable construction.

*Mandamus: County treasurer: County auditors.* Mandamus will not be granted to compel the county treasurer to pay a warrant drawn by the board of auditors, for an amount in excess of the salary prescribed by the statute aforesaid, allowed to the relator by said board, in disregard of said statute, for services as one of the county auditors.

*Heard April 23. Decided April 30.*

Application for *mandamus.*

*Van Dyke & Brownson* and *D. C. Holbrook,* for the respondent.

*Theodore Romeyn,* for the relator.

CHRISTIANCY, CH. J.

By act of April 12, 1871 (*Sess. Laws, Vol. 3, pp. 155 and 156*), the legislature provided, "that each county auditor of Wayne county shall receive a salary of one thousand dollars per annum, to be paid quarterly from the county treasury; which sum shall be in full for all services and expenses, and traveling fees, in attending upon the duties of his office; any auditor receiving further or other compensation for his services, or expenses, or traveling fees, in attending to the duties of his office, shall be deemed guilty of a misdemeanor," etc.

The board of auditors, however, in disregard of this act, allowed to the relator, in excess of this salary, the sum of fifty dollars for services as one of the county auditors; and drew their warrant for the amount upon the county treasurer, who refused to pay the same; and application is now made to this court for a *mandamus* to compel the treasurer to pay it.

The relator insists that this act of the legislature is in violation of *section 10, of article X., of the state constitution,* which is in these words: "The board of supervisors,

or, in the county of Wayne, the board of county auditors, shall have the exclusive power to prescribe and fix the compensation for all services rendered for, and to adjust all claims against, their respective counties, and the sum so fixed, or defined, shall be subject to no appeal."

As the services of the county auditors are "services performed for the county," it is insisted that the power of the auditors to fix the compensation for their own services is necessarily included under this provision. And if constitutions and statutes were always to be construed like mathematical axioms, this reasoning would be very conclusive, since the whole must include all its parts; and "all services rendered for the county," would necessarily include the services of the auditors, so far, at least, as they were performed exclusively for the county. But, in legal reasoning, and in the construction of constitutions and statutes, we are often compelled to content ourselves with conclusions somewhat less certain than those involved in mathematical axioms; because neither conventions nor legislatures always use language with mathematical accuracy, and neither the human mind nor human affairs, will always submit to merely mathematical rule. For various reasons, and upon various grounds, exceptions or qualifications are sometimes implied, though not expressed. An act or constitution which should give to justices of the peace, or to a certain court, the right to try all cases involving certain amounts, or of a certain character, would give neither the justice nor the judge the right to try his own cause, or give final judgment in his own favor, though the case in every other respect should fall within the class he was expressly authorized to try. An exception of such cases would be implied; and the exception would be just as valid and just as readily recognized by all courts as if it had been expressed. I do not mean to say that the like exception in the present case,

if any can be implied, is as clear as in the instance supposed. I use the illustration now only to show that the mathematical argument is by no means necessarily conclusive. This provision, whatever may be the proper inference from it, does not *expressly* declare that the board shall have the right to fix their own compensation, or allow their own claims, as has generally, if not always, been done in the few instances of minor importance, in which it has been the real intention of legislative bodies to grant such a power; it does not expressly refer to the subject of their compensation, or their claims, and it is entirely legitimate to inquire whether there is not something in the nature of the provision itself, considered in connection with the legislative and judicial history of the state, and the action of the convention which framed it, which may furnish a satisfactory inference that such an exception was intended, and should therefore be implied in reference to the services and claims which this board of auditors were empowered to fix and prescribe, and the claims they were authorized to adjust, as would be implied in case of power given to judicial officers, in the instance already mentioned.

As to the nature of the provision itself, if it is to be construed, as claimed by the relator, to give the board the power, exclusive of that of the legislature, to fix the amounts to be allowed to all officers, for services to be performed for the county, *their own included,* and to preclude the legislature from prescribing the fees or salary to be paid, and to determine, without control from the legislature or the courts, all claims of every nature for which the county is liable, including claims in their own favor; then, it gives to the board both a legislative and a judicial power, absolute and unlimited, upon all questions of this kind; *legislative,* in prescribing in advance the rule and rate of compensation, and *judiciol,* in determining, without appeal

or review, the just and reasonable compensation for any service for the county, though performed by themselves, for which they have not, in their legislative capacity, already prescribed a definite compensation; and such would seem to be the nature of the allowance of the claim of fifty dollars to the relator in the present case.

Now, the maxim, that no man shall be judge in his own cause, is one so deeply rooted in the minds of the American people, and, up to the time the constitution was adopted, so uniformly applied to this and the like boards, that to give them this power of final adjudication upon their own claims and of fixing the amount of their own compensation without appeal or review, the language should be so clear as to admit of no other reasonable construction.

Neither this board of auditors nor the boards of supervisors were created for the first time by this constitution; they were both in existence and full operation, and had been so for years, when the constitution was framed; and their compensation (as well as that of the county commissioners who preceded them) had been always fixed by the legislature. In no instance had they been allowed to fix their own compensation or adjudicate upon their own claims. The constitution recognized and adopted them as existing boards, giving to the board of supervisors, and authorizing the legislature to give them, certain specified additional powers, but adding nothing to the powers of this board of auditors, except what may be claimed under this section, and being wholly silent as to the compensation, or mode of fixing the compensation, of the members of either board, or their power to adjudicate upon their own claims.

Is it not, then, a fair and even a strong inference, that if the convention had intended to abrogate a principle so long recognized as fundamental, and always applied to the same boards which they were thus recognizing and continu-

ing,—not creating,—they would have done so by *express* words, giving them the *express* power to fix their own compensation and to adjust their own claims? And, in omitting to do this, is it not fair to infer they intended to recognize the principle upon which they were already established and then existing? And, bearing in mind that these same boards had, for years under then existing laws, been accustomed and required to pass upon and adjust, allow, or reject, claims against the county presented *to them* for adjustment and allowance, but *never* to adjust or allow *their own claims* for services, or to fix *their own compensation*, what is fairly to be understood by the power given them by the tenth section, "to adjust all claims against their respective counties?" To what claims does this power refer? Clearly, we think, it refers only to "claims" *presented to them* for allowance against the county, which they, in behalf of the county and for the protection of the public interests, are expected fairly to examine and scrutinize, and *not* to claims presented *by themselves*, and *to themselves*, for services which they claim to have performed, in reference to which, their own interests are directly opposed to the interests of the public. And we see no ground for any distinction in this respect between the "power to prescribe and fix the compensation for services rendered for their respective counties," and the "adjusting of *claims* against" such counties. If they cannot finally adjust their own *claims*, there is no ground for contending that they can prescribe and fix their own compensation. If a state constitution, or that of any other sovereignty, were to establish a legislature, with general legislative powers, without making any provision for their payment, it might be competent for them to fix their own compensation, as there would be no other legislative power above them, by whom that compensation could be prescribed.

It is true that statutes and constitutions have sometimes given express power to certain township, or county, or city officers, or boards, to audit and allow their own claims for services, though this, when given, has generally been from some supposed necessity, or when it could be of little moment, and subject to some restriction as to amount, or to review by some other tribunal. And it may, we think, be laid down as the sound and only safe rule, that such a power can only be given by express words or necessary implication, and should never be recognized when the language used, when interpreted by the light of the past legislative and judicial history of the state, will permit a reasonable and probable inference of a contrary intent. Especially should this rule apply when, as in this case, the question arises upon the power of the legislature to fix the rule of compensation, as they have done by the act here in question. The only safe rule of decision upon such a question is that which has always been expressly recognized or tacitly assumed by this court, that every act of the legislature is to be presumed valid until its invalidity is shown, and that no act of the legislature is to be declared void as in violation of the constitution, while a serious doubt exists as to the conflict.

But the question, whether this section (§ *10 of Art. X.*) of the constitution gives to the boards of supervisors, or auditors, such exclusive power over the subject of compensation for services, which are by law made a charge upon the county, as to exclude the power of the legislature to establish the rule of compensation, or to authorize the amount to be fixed by some other board, when not performed for the exclusive corporate benefit of the county, is not a new one. Our predecessors in this court in 1855, in the first case arising under this section, held that certain charges for removing a person sick with the small-

pox, by order of the board of health of the township, which the statute made a charge upon the county, and which had been adjusted and fixed by the board of health, became a fixed and liquidated charge against the county, which the board of supervisors had no power to disallow, and which, by *mandamus*, they were compelled to allow.— *People etc., v. Supervisors of Macomb Co., 3 Mich., 475.* And in that case it was said by the court, that when the legislature has prescribed fees for justices of the peace, and ministerial officers, all the supervisors can do by way of adjusting them, is to see that the services have been actually rendered, and that the fees charged are those established by law for such services. And this case was approved by this court in *People v. Board of Auditors, 13 Mich., 233,* in which it was held that this section of the constitution does not give exclusive power to the board, in those cases, at least, where charges have been laid upon counties, simply as a fair way of apportioning the public burdens, and where no benefit accrued to them in their corporate capacity; and that the services of the clerk of the police court of Detroit, though made a charge upon the county, were not services performed for the county, over which the board of auditors had exclusive control. The difficulty of drawing any intelligible line between these and other classes of services, is there admitted. All services which are by law made county charges, are certainly, in one sense, if not in the true legal sense, "services performed *for* the county;" and a very small part of the services performed for any county, are performed for the mere corporate benefit or profit of the corporation itself. Counties and county boards are part of the organization and necessary machinery for carrying into effect the government of the state; and many of the powers conferred, and the duties imposed, upon the boards of supervisors, and

upon this board of auditors, are as essential to the due administration of the general public interests, as to the mere corporate interests of the counties.

But neither this question, nor the nature or extent of the power of the board to prescribe the salaries of particular county officers (such as clerk, prosecuting attorney, or county superintendent of schools) is here in question, and we express no opinion upon them.

The only question is, whether the board has the *exclusive* power to fix the compensation for the services of its own members, and to adjust and allow their own claims.

In *People v. Supervisors of Macomb County*, above cited, it was said that the "primary object of this provision (§ 10, *Art. X.*) of the constitution, must be apparent. It was, to take away and entirely abrogate the right of appeal from decisions made by boards of supervisors, in fixing compensation, and adjusting claims, which, before the revision of the constitution, existed by law. This is the legitimate and only legal effect of the provision. The language employed in it, when fairly analyzed and considered in connection with the prior right of appeal and the still existing law, will bear no other rational construction."

On looking into the debates and journal of the convention which framed the constitution, we find much to confirm this view of the real object and purpose of this section. The sole contest—and it was long, and often renewed and repeated—was whether the right of appeal, which formerly existed, should be taken away, and the decision of the board made final and conclusive; without any suggestion from any quarter, that the claims to be presented to the board, were to be in any way different in their nature from what they had usually been, or that their disposition was to rest upon any different principles. And, what may now seem to be a little remarkable, while all seemed to take it for granted that the board, if they erred at all, would err by

allowing too little, a large portion of the convention pro-
tested against the injustice which might be done to indi-
viduals by not allowing what was fairly due; but the
majority seemed to fear still more the injustice likely to be
done to the county, by an appeal to the courts, which, as
they urged, would be likely to allow more than a reasona-
ble compensation; and no one appears ever to have sug-
gested the propriety of allowing the members to determine
their own compensation, or to audit their own claims. In
the only instance in which the idea was ever suggested, of
allowing the board to fix their own compensation, it was
mentioned with reprobation, and condemned by a vote of
the convention, without a single voice in its favor.—
*Debates of Constitutional Convention, pp. 517 to 519.*

Had there been any idea that the members of the board
were to be allowed to do this without any control from the
legislature, and without appeal or review, it is more than
probable that some member, at least, would have expressed
some apprehension lest too much might be allowed. These
debates, and the actions of the convention, were published
daily and scattered broad-cast among the people, and therefore
have a tendency to show the understanding and intention
of the people in adopting the constitution. The first leg-
islature under the new constitution, composed largely of
men who had been members of the convention, exercised
the power of prescribing and fixing the compensation of
the members of boards of supervisors (*Laws of 1851, p. 242*),
fixing it at the same rates as then already fixed for the
county auditors of Wayne county (*Rev. Stat. of 1846, ch.
14, § 34*), which was allowed to stand; and from that day
to this the compensation of the members of both boards
has continued to be fixed by the legislature.

This consideration would by no means be a controlling
one, if the constitution was clear against the exercise of
the power; but when the language of the instrument is

construed with reference to the previous history of legislation, the boards then existing and continued by the constitution, and the real purpose to be accomplished by the provision, as shown by the action of the convention and their debates upon this provision, we think it reasonably clear, that neither the convention in framing the section, nor the people in adopting it, intended to take from the legislature the right to prescribe and fix the compensation of the members of those boards; and that the act of 1871, is not, therefore, in violation of this, or any other, provision of the constitution.

The motion for a *mandamus* must, therefore, be denied, with costs.

COOLEY, J., concurred.

CAMPBELL, J.

In regard to the power of the county auditors over claims generally, I think the language of the constitution is so much broader than that of any previous statute as to give them legislative, as well as *quasi* judicial, authority, to the exclusion of any other interference.

But I agree that, in regard to their own claims, there is such an incongruity in their acting on both sides, and representing adverse interests, that there should be an exclusion of the power asserted, unless clearly given beyond mistake. They are not a general legislative body, but officers acting only within a limited sphere, and the general common-law disabilities of such officers, which would exist if this provision were statutory, should apply as well to constitutions as to statutes, so long as they are within the same equity. I agree, therefore, in the result arrived at by my brethren.

GRAVES, J., did not sit in this case.