BOARD OF EDUCATION OF DETROIT *v.* STATE BOARD OF ASSESSORS.

TAXATION—RAILROADS—STATE BOARD OF ASSESSORS—AUTHORITY —RATE OF TAXATION.

The State board of assessors, provided for by the amendment of 1900 to article 14 of the Constitution, and Act No. 173, Pub. Acts 1901, in determining the average rate of taxation on property throughout the State other than railroad property, with a view to the assessment of the latter, should take as a basis the actual assessed valuation of such other property, as reported to it in accordance with said act, and it has no authority to increase such valuation on the theory that the assessments were too low.

*Mandamus* by the board of education of the city of Detroit to compel the State board of assessors to correct an assessment. Submitted April 22, 1903. (Calendar No. 19,876.) Writ granted May 1, 1903.

*T. E. Tarsney, P. J. M. Hally,* and *A. B. Hall,* for relator.

*Charles A. Blair,* Attorney General (*Roger Irving Wykes,* of counsel), for the people.

*A. F. Freeman* and *J. C. McLaughlin,* for respondent.

Montgomery, J. This is an application for a *mandamus*. It sets out, in substance, that the State board of assessors, in levying the tax upon the railroad property of this State, has assumed to fix the rate of taxation by dividing the total tax levy on all property other than railroad property by the value of such other property as determined by the defendant board by adding to the actual assessed value of such property as fixed by the local assessors and by the board of State tax commissioners, acting under the authority of the law relating to the assessment of taxes, the sum of $296,748,142, thus making the aggregate divisor in determining the rate of taxation that much in excess of the assessed valuation, thereby reducing the rate to be levied upon the railroad property of the State, and thus reducing the amount which relator would receive as its portion of the tax assessed against railroad property by a very substantial sum.

The answer discloses that the respondent board, entertaining the view that local assessors had failed to assess property at its full value, has assumed to exercise the right to determine the actual value of the property of the State for the purpose of fixing the rate to be levied upon railroad property under the terms of Act No. 173 of the Public Acts of 1901. The sole question presented in the case is whether the respondent board has this power. The question is an important one, and we have the aid not only of able briefs and arguments presented by relator and by Mr. Freeman, the president of the respondent board, appearing in his own behalf, but also a carefully prepared brief, supported by a clear and able argument, by the attorney general, who intervened on behalf of the State.

For many years the statutes of this State have provided for the assessment of property at its full cash value. In 1899 the legislature, with the purpose of correcting supposed abuses on the part of the assessing officers, by Act No. 154, provided for the creation of a board of State tax commissioners, by adding various sections to the tax law. Extensive powers were conferred upon this board. Its

members were to have and exercise general supervision over the supervisors and other assessing officers of the State, and were authorized to take such measures as should secure the enforcement of the provisions of the law, to the end that all properties in the State liable to assessment should be placed upon the assessment rolls, and assessed at their actual cash value. The act provided that each county in the State should be visited at least once in each year by a member of the board. It authorized the board to require property omitted from the assessment rolls to be placed thereon, and an increase of the valuations as fixed by the local assessing officers. It went so far as to permit the setting aside a roll wholly which was found to be so grossly irregular and unlawfully assessed as to make such action expedient or necessary. It is in the light of these provisions of the statute that the constitutional amendment to article 14, adopted in 1900, is to be read. This amendment contains three sections, and reads as follows:

"SEC. 10. The State may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes from corporations. The legislature may provide for the assessment of the property of corporations at its true cash value by a State board of assessors, and for the levying and collection of taxes thereon. All taxes hereafter levied on the property of such classes of corporations as are paying specific taxes under laws in force on November sixth, A. D. nineteen hundred, shall be applied as provided for specific State taxes in section one of this article.

"SEC. 11. The legislature shall provide a uniform rule of taxation except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: *Provided*, that the legislature shall provide an uniform rule of taxation for such property as shall be assessed by a State board of assessors, and the rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate levied upon other property upon which *ad valorem* taxes are assessed for State, county, township, school, and municipal purposes.

"Sec. 13. In the year one thousand nine hundred and one, and every fifth year thereafter, and at such other times as the legislature may·direct, the legislature shall provide for an equalization of assessments by a State board on all taxable property except that taxed under laws passed pursuant to section ten of this article."

Pub. Acts 1901, p. 404.

Acting under the authority of this constitutional amendment, Act No. 173 of the Public Acts of 1901 was enacted, and it is provided in section 11 that:

" It shall be the duty of the county clerk in each county in this State, as soon as possible.after the equalization of the board of supervisors of his county of the assessment rolls of the several municipalities therein,   *   *   *   to make a report, duly certified, to the State board of assessors of the record of such equalization,   *   *   *   which report shall, among other things, contain a statement of the amount of *ad valorem* taxes to be raised in the several municipalities of such county for State, county, municipal, township, school, and other purposes, and a statement of the aggregate valuation of the property in each of said several municipalities, as taken from the assessment rolls of said municipalities for the year in which such equalization is made."

Section 12 provides that, as soon as the reports required by the preceding section to be filed have been filed, or the information therein required to be procured shall have been procured, and not later than the 15th day of December in each year, the said State board of assessors shall· ascertain and determine the average rate of taxation for the then current year levied upon other property upon which *ad valorem* taxes are assessed for State, county, township, school, and municipal purposes.

A fair reading of this language of the statute, we think, leads to the conclusion that the board of assessors has imposed upon it the duty, ministerial in character, of determining by a computation from *data*, which the law provides for placing in its hands, the rate of taxation which other property in the State is subjected to, as it appears by assessment rolls which are supposed to contain an

accurate and true assessment of all property at its full
cash value. It is true the language is employed here, as
it is in section 11 of the amendment, that the board of
assessors shall ascertain and determine the average rate
levied upon other property; but the general tenor of Act
No. 173 clearly indicates the manner in which that deter-
mination is to be made, and the term does not necessarily
import of itself a determination judicial in its nature.

But it is urged in behalf of the power exercised by the
board in this case that, if the act is subject to this con-
struction, it is in conflict with the constitutional amend-
ment itself. In determining this question, under well-
settled rules, we are not to ignore the contemporaneous
construction placed upon the amendment by the legislature
itself. But we think there is no difficulty in construing
the constitutional amendment. The language of the
amendment is that the property described shall be
assessed; that the rate of taxation on such property shall
be the rate which the State board of assessors shall *ascer-
tain* and determine is the average rate *levied upon other
property upon which ad valorem taxes are assessed for
State, county, township, school, and municipal pur-
poses.* We think the clear intent and purpose of this pro-
vision is that the rate which is actually levied upon prop-
erty actually assessed is the rate contemplated by the lan-
guage employed. This constitutional provision cannot be
segregated from other provisions relating to the subject of
taxation. Construed in the manner above indicated, it is in
entire accord with our whole system of taxation, which is
not only that railroad property, but that all other property,
shall be assessed at its cash value, and that all classes of
property shall bear the burden of taxation equally. When
this is said, it is meant, of course, as nearly equally as
human frailty or erring human judgment renders possi-
ble. As was said by Judge COOLEY, in his work on Tax-
ation (pages 221, 222, 2d Ed.):

" It cannot be too distinctly borne in mind that any pos-
sible system of tax legislation must inevitably produce

unequal and unjust results in individual instances; and, if inequality in result must defeat the general law, then taxation becomes impossible, and governments must fall back upon arbitrary exactions. But no such impracticable principle is recognized in revenue laws. While equality and justice are constantly to be aimed at, impossibilities are not demanded. Tax legislation must be practical."

See, also, *Com.* v. *Bank*, 5 Allen, (Mass.) 428; *Grim* v. *School District*, 57 Pa. St. 433, 437 (98 Am. Dec. 237).

It was suggested in argument that, were we to adopt the view that the power was vested in the State board of assessors to ascertain and determine according to its own judgment the value of the property other than railroad property throughout the State upon which taxes have been assessed, inasmuch as the statute (Act No. 173, above cited) makes no provision for notice to the railroad companies whose assessment is to be determined by taking such valuation as a divisor, it would present a grave constitutional question as to whether the legislature had not exceeded its powers in reposing this authority in the board of assessors. In the view we have taken of the main question, it becomes unnecessary for us to determine whether such a delegation of power would be beyond the constitutional authority of the legislature. We, however, entertain no doubt that, under the construction we have placed upon this provision, the legislature was well within the limits of its authority. It has fixed a method through which, by mathematical computation, the exact rate shall be determined, and, as we have seen, this is based upon definitely ascertained *data* which is committed to the hands of the State board of assessors.

The writ of *mandamus* will issue as prayed, but without costs.

The other Justices concurred.