[S. F. No. 9260. In Bank.—June 30, 1920.]

CITY AND COUNTY OF SAN FRANCISCO, (a Municipal Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] CONSTITUTIONAL LAW—PROVISION HAVING TWO MEANINGS—ADOPTION OF ONE MEANING BY LEGISLATURE—EFFECT OF.—Where a constitutional provision may well have either of two meanings, the action of the legislature in adopting one of such meanings by statute is well-nigh, if not completely, controlling.

[2] ID. — ANNULMENT OF STATUTE — POWER OF COURTS. — The courts should not and must not annul, as contrary to the constitution, a

statute passed by the legislature unless it can be said of the statute that it positively and certainly is opposed to the constitution.

[3] Workmen's Compensation Act—Definition of Term "Injury"—Provision Constitutional.—Subdivision 4 of section 3 of the Workmen's Compensation Act defining the term "injury" as including any injury or disease arising out of the employment is constitutional.

[4] Id.—Injury by Disease—Right to Compensation.—Compensation is not due merely for injury by disease contracted by an employee while employed, since the injury must be one arising out of the employment, and where the injury is by disease there must exist the relation of cause and effect between the employment and the disease.

[5] Id.—Death of Hospital Steward from Influenza—Disease Contracted in Course of His Employment—Proper Award of Compensation.—In view of the construction placed by the legislature in the Workmen's Compensation Act upon the word "injury," contained in section 21 of article XX of the constitution, an award of compensation for the death of a hospital steward from influenza contracted in the course of his employment is within the jurisdiction of the commission.

APPLICATION for a Writ of Certiorari to annul an award of the Industrial Accident Commission. Award affirmed.

The facts are stated in the opinion of the court.

George Lull, Maurice T. Dooling, Jr., Hugh L. Smith, Assistant City Attorneys, and Redman & Alexander for Petitioner.

A. E. Graupner and A. A. Tiscornia for Respondent.

OLNEY, J.—This is an application for a writ of *certiorari* annulling an award of the Industrial Accident Commission. The applicant is a municipal corporation, and had in its employ as a hospital steward in one of its hospitals a man named Ernest F. Slattery. While so employed, Slattery was taken with influenza on October 15, 1918, and died of that disease eight days later. His widow presented to the com-

3. Disease as accident within meaning of Workmen's Compensation Act, notes, 2 Ann. Cas. 140; 15 Ann. Cas. 886; Ann. Cas. 1913A, 1121; Ann. Cas. 1918B, 309, 345, 354.

mission a claim for compensation for his death, and the commission made an award in her favor. The present application is to annul this award.

Two grounds are urged why the award is invalid. The first, and more important, is that the awarding of compensation for death by disease, the origin of which was not a bodily injury suffered through violence, is beyond the powers of the commission. The second is that there is no evidence to support the finding of the commission that the disease of which Slattery died was contracted in the course of his employment, and arose out of it.

The decision on the first question presented turns on the meaning to be given to the word "injury" as used in article XX, section 21, of our constitution. The section has been amended since Slattery's death, but at that time it read:

"The legislature may by appropriate legislation create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party."

The word "injury" as so used means, of course, only bodily injury, and the position of the city is that it means only bodily injury suffered by or resulting from violence, while the position of the commission is that it covers any harmful effect- upon the body, whether by violence or by disease. The word is frequently used in both the broader and the more limited sense. In common usage, it has the more general meaning. Thus, Webster defines "injury" as (1) "any wrong, damage, or mischief done or suffered," as (2) "a source of harm," or as (3) "a wrong or damage done to another." On the other hand, when personal injuries are spoken of, there are apt to be meant only bodily injuries suffered through violence in some form or to some extent, traumatic injuries. The exact meaning of the word "injury," as used in Workmen's Compensation Acts, or in a similar connection, has come before the courts for consideration on numerous occasions, and their rulings are by no means harmonious. On the one hand, there are a number of cases holding that the word has the more limited meaning. An example of this is *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, [L. R. A. 1917D, 77, 99 Atl. 507], where it was held that the phrase "personal injury" did not include injury

or harm suffered by disease, and that compensation was not allowable for the death of an employee by pneumonia contracted as the result of unusual exposure and exhaustion in the course of his employment. Other examples along the same line are *Industrial Acc. Com. etc.* v. *Brown,* 92 Ohio 309, [L. R. A. 1916B, 1277, 110 N. E. 744]; *Adams* v. *Acme etc. Co.,* 182 Mich. 157, [Ann. Cas. 1916D, 689, L. R. A. 1916A, 283, 148 N. W. 485]; *Richardson* v. *Greenburg,* 188 App. Div. 248, [176 N. Y. Supp. 651]; *Liondale etc. Works* v. *Riker,* 85 N. J. L. 426, [89 Atl. 929].

On the other hand, there are a large number of decisions which adopt the broader meaning, and hold that compensation is allowable for the injury or harm done by disease, although the disease is not contracted as the result of any violence whatever in the ordinary sense of that word.

Under the English Workmen's Compensation Act, compensation is, or was, allowable only for "personal injury by accident," a much more limited expression than that found in our constitutional provision, and one in which it might well be thought there was some implication of an injury by violent external means. Nevertheless, the House of Lords held in *Brintons* v. *Turvey,* L. R. App. Cas. (1905) 230, that compensation was allowable for the injury sustained by a workman from anthrax contracted by him in the handling of infected wool, there being no violence other than that bacteria from the wool found their way into his system.

Similarly, it was held in *Scott* v. *Pearson,* L. R. 2 K. B. Div. (1916) 61, that compensation was allowable for cattle ring-worm contracted by an employee by coming in contact, not violent, with infected calves.

Along the same line, the House of Lords held in *Glasgow Coal Co.* v. *Welsh,* L. R. 2 App. Cas. (1916) 1, that a miner was entitled to compensation for rheumatism contracted by him as a result of his being required to stand for a number of hours in cold water to bale out the mine-pit.

The Indiana Workmen's Compensation Act, like the English act, allows compensation for "personal injury or death by accident." But in *United Paperboard Co.* v. *Lewis,* 65 Ind. App. 356, [117 N. E. 276], compensation was allowed to a workman for acute nephritis contracted by him through his being required to work for several hours in heated paper

pulp. The following portion of the opinion is pertinent here, the italics being ours:

"The courts have also differed as to whether a disease following an employment, should be considered an injury by accident within the meaning of such acts. In the various decisions on this subject it is generally recognized that diseases are of two classes: First, the so-called industrial or occupational diseases, which are the natural and reasonably to be expected results of a workman following a certain occupation for a considerable period of time; second, diseases which are the result of some unusual condition of the employment. The first class is illustrated by lead poisoning and the second by pneumonia following an enforced exposure. As a rule, such industrial or occupational diseases are not considered as injuries by accident and in the absence of special statutory provision compensation is not allowed therefor. On the other hand it is generally accepted that a *disease,* which is not the ordinary result of an employee's work, reasonably to be anticipated as a result of pursuing the same, but contracted as a direct result of unusual circumstances connected therewith, *is to be considered an injury* by accident, and comes within the provisions of acts providing for compensation for personal injury so caused (citing a long list of authorities)."

In *Hurle's Case,* 217 Mass. 223, [Ann. Cas. 1915C, 919, L. R. A. 1916A, 279, 104 N. E. 336], a workman employed to tend furnaces for making gas claimed compensation for the loss of his sight due to an acute attack of optic neuritis induced by poisonous gases from the furnaces to which his work constantly exposed him. The Massachusetts act allowed compensation for "personal injury" without requiring that it be by accident, and the question discussed by the court was as to whether the case was one of a "personal injury." The discussion concludes thus:

"The learned counsel for the insurer in his brief has made an exhaustive and ingenious analysis of the entire act touching the words 'injury' or 'injuries,' and has sought to demonstrate that it cannot apply to an injury such as that sustained in the case at bar. But the argument is not convincing. It might be decisive if 'accident' had been the statutory word. It is true that in interpreting a statute words should be construed in their ordinary sense. Injury, how-

ever, is usually employed as an inclusive word. The fact remains that the word 'injury' and not 'accident' was employed by the legislature throughout this act. It would not be accurate but lax to treat the act as if it referred merely to accidents."

In *State* v. *Trustees,* 138 Wis. 133, 135, [20 L. R. A. (N. S.) 1175, 119 N. W. 806], the widow and children of a policeman dying from pneumonia contracted by exposure in the course of his duty, made application for a pension under a statute which provided for a pension to the dependents of a policeman "injured" 'in the performance of his duty. It was contended that by injury was not meant disease merely, and upon this point the court said:

"The word 'injury' in ordinary modern usage, is one of very broad designation. In the strict sense of the law, especially the common law, its meaning corresponded with its etymology. It meant a wrongful invasion of legal rights and was not concerned with the hurt or damage resulting from such invasion. It is thus used in the familiar law phrase *damnum absque injuria.* In common parlance, however, it is used broadly enough to cover both the *damnum* and the *injuria* of the common law, and indeed is more commonly used to express the idea belonging to the former word, namely, the effect on the recipient in the way of hurt or damage, and we cannot doubt that at this day its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by anyone. Hence, unless some reason to the contrary is presented, it should be so understood in these statutes. (Subd. 1, sec. 4971, Stats. [1898].) The respondent contends that, nevertheless, the word should be limited to the results of external violence. By itself the word 'injury' or 'injure' has no more application to the result of violence than to the result of any other injurious influence. A disease resulting from negligence of a physician in failing to give treatment is just as much an injury in common phrase as if it resulted from affirmative maltreatment or external violence."

The following cases, in none of which was the element of violence present, are along the same line: *Alloa Coal Co.* v. *Drylie,* 6 B. W. C. C. 398 (death by pneumonia); *Hood* v. *Maryland etc. Co.,* 206 Mass. 223, [138 Am. St. Rep. 379, 30 L. R. A. (N. S.) 1192, 92 N. E. 329] (contracting of glan-

ders) ; *Dove* v. *Alpena etc. Co.,* 198 Mich. 132, [164 N.W. 253] (death by anthrax) ; *Vennen* v. *New Dells Lumber Co.,* 161 Wis. 370, [Ann. Cas. 1918B, 293, L. R. A. 1916A, 273, 154 N. W. 640] (death by typhoid fever).

Finally, there is the decision in this state in *Hartford etc. Co.* v. *Industrial Acc. Com.,* 32 Cal. App. 481, [163 Pac. 225], where an employee engaged in handling pulverized grain, and who contracted an affection of the nose and throat from the grain, was allowed compensation. The sole point discussed in the opinion, to be sure, is as to whether the disease was caused by the man's employment, but nevertheless it is a decision that cannot be justified unless the word "injury" is broad enough to include the harm done by disease.

As between these two conflicting lines of decision it is not necessary to determine where the weight of authority lies, or which cases are the better reasoned. If those which give the broader meaning to the word "injury" do not lay down the better rule, they at least establish this, that it cannot be said that the broader meaning is an impossible or unreasonable one. The situation then, as it presents itself in connection with our constitutional provision, is at least that both by general usage and by the decisions of the courts the word "injury" may have either of two meanings, and that either is reasonable and possible. **[1]** In such a situation, where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. When the legislature has once construed the constitution, for the courts then to place a different construction upon it means that they must declare void the action of the legislature. **[2]** It is no small matter for one branch of the government to annul the formal exercise by another and coordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the constitution, a statute passed by the legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution. This is elementary. But plainly this cannot be said of a statute which merely adopts one of two reasonable and possible constructions of the constitution. In *Fargo* v. *Powers,* 220 Fed. 697, 709, it is said:

"If the constitutional provisions in question are susceptible of two constructions—one being that contended for by complainants, the other that taken by the legislature—the action of the legislature in adopting one of those constructions and enacting a statute carrying it into effect, as thus construed, must be deemed conclusive. That rule is: 'That the acts of a state legislature are to be presumed constitutional until the contrary is shown; and it is only when they manifestly infringe some provision of the constitution that they can be declared void for that reason. In case of doubt, every presumption, not clearly inconsistent with the language or subject matter, is to be made in favor of the constitutionality of the act. The power of declaring laws unconstitutional should be exercised with extreme caution and never where serious doubt exists as to the conflict.' Where a statute has been adopted in carrying into effect a constitutional provision, the constitutional provision and statute must both be so construed, as to permit the act to stand. This question was passed on in *People* v. *Blodgett,* 13 Mich. 151, 161, 162, where Judge Christiancy says:

" 'But it has been strenuously insisted here that these principles can only properly apply when the doubt exists as to the construction of the act, and not where it arises upon the meaning of a constitutional provision; that it is in all cases the duty of the court first to fix and settle the meaning, definitely, of the constitution, whatever may be their doubts upon it, and then to examine the act and apply it to the constitution.

" 'Now, it strikes me, as a self-evident proposition, that the question whether a legislative act conflicts with the constitution must, of necessity, equally involve the examination of both. And that, while it can make but little practical difference which is first examined and construed, the more logical order, when it is claimed that an act is unconstitutional, would be first to determine what the act is. Nor can I perceive any good ground for holding that the doubt which is to restrain us from pronouncing the act unconstitutional must be confined to the meaning of the act; nor why courts can be bound to settle, fix, and declare the meaning of the one, in spite of their doubts, more than of the other. The doubt which is to save the act is the doubt of the con-

flict; and this may arise alike from the construction of the one or the other, or both. In fact, it will be found that, in much the greater number of cases, where the rules above cited have been laid down, the doubts arise upon the construction of the constitution, and not upon that of the act which was claimed to conflict with it.' ''

In *Board of Education* v. *State Board of Assessors,* 133 Mich. 120, [94 N. W. 669], the question of the construction of this constitutional provision was before the court, which gave effect to the legislative construction, saying:

'' 'But it is urged in behalf of the power exercised by the board in this case that, if the act is subject to this construction, it is in conflict with the constitutional amendment itself. In determining this question, under well-settled rules, we are not to ignore the contemporaneous construction placed upon the amendment by the legislature itself.' *Kennedy* v. *Gies,* 25 Mich. 92; *Pfeiffer* v. *Board of Education,* 118 Mich. 564, [42 L. R. A. 536, 77 N. W. 250].'' (See, also, *County of Tulare* v. *County of Kings,* 117 Cal. 195, [49 Pac. 8]; *Railroad Commrs.* v. *Market St. Ry. Co.,* 132 Cal. 677, [64 Pac. 1065].)

In the present case, the legislature has construed the constitution, and has placed upon the word ''injury'' the broader meaning possible to it. Section 6 of the Workmen's Compensation Act, [Stats. 1917, p. 831], provides that compensation shall be given by an employer ''for any injury sustained by his employees arising out of and in the course of the employment and for the death of any such employee if the injury shall proximately cause death.'' Subdivision 4 of section 3 of the act defines injury as follows:

''4. The term 'injury' as used in this act shall include any injury or disease arising out of the employment. In case of aggravation of any disease existing prior to such injury, compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury.''

The constitution cannot be given the more limited meaning contended for by the city without declaring this provision in the statute void. This we cannot do, unless there is a plain and unmistakable conflict between the statute and the constitution. But there is no such plain and unmistakable conflict,

since the statute does, no more than adopt what is at least a possible and not unreasonable construction of the constitution. [3] This being the case, it must be held that the provision of the compensation act, whereby a disease arising out of employment is declared to be an injury for which compensation shall be paid, is not unconstitutional, but is operative and controlling.

As to the second contention of the city, that Slattery did not contract the influenza from which he died because of his employment, the facts relied upon in its support are that an epidemic of the disease was raging in the city at the time, that the disease is highly infectious, and was so general that one out of every ten in the city contracted it, and that every member of the community was exposed to it to a more or less extent. The existence of these facts cannot be doubted, and from them it is argued that it cannot be said with any reasonable certainty that Slattery contracted the disease because of his employment as hospital steward, even though he was handling influenza cases. [4] It is also contended, and truly, that compensation is not due merely for injury by disease contracted by an employee while employed. The injury must be one arising out of the employment, and where the injury is by disease there must exist the relation of cause and effect between the employment and the disease. It is also true that to justify an award there must be an affirmative showing of a case within the statute, or, concretely, it must affirmatively appear here that Slattery contracted the disease from which he died because of his employment.

On the other hand, the evidence showed that the incubation period of the disease is from one to four days, that Slattery in the course of his duties during the five days preceding his being taken ill had had to handle and had been exposed to at least twelve developed cases of influenza, that so far as known he was not exposed to any cases except in the course of his employment, that he lived only half a block from the hospital where he was employed, and during the two weeks preceding his illness had been working very hard and had gone directly from his home to his work and from his work to his home, and had not been out, that his exposure because of his work was far greater than that of the average person, and that among the nurses in the hospitals of the city, a class

exposed in much the same degree as Slattery, the proportion who contracted the disease ran from fifty to eighty-five per cent, as against ten per cent for the community in general. The preponderance of the medical testimony also was to the effect that Slattery contracted the disease as a result of his peculiar exposure to it incidental to his employment.

It, of course, cannot be said that from these facts it is certain that Slattery contracted his sickness because of his employment. But certainty is not required. It is not even required that the award be in our judgment in accord with the preponderance of the evidence, in order that we be not at liberty to annul it. **[5]** We cannot disturb the award unless we can say that a reasonable man could not reach the conclusion which the commission did. This we cannot say in the present case.

If there had been no epidemic in San Francisco at the time, and it appeared that Slattery as hospital steward had been exposed directly to a considerable number of influenza patients, and was not known to have been exposed otherwise, and had come down with the disease within the period of incubation after his exposure, the conclusion that the disease was due to his exposure in the course of his work could hardly be questioned. But these are the actual facts, with the single exception that an epidemic was raging. To the extent of the severity of this epidemic the strength of the conclusion is weakened. It may well be that if the epidemic were so severe that the proportion of the general public who were attacked was anything like as great as the proportion of those exposed as was Slattery, the question of whether he was attacked because of the exposure incident to his employment, or because of the exposure general to the public would be so much a matter of conjecture and speculation as not to warrant a definite conclusion as the basis of an award. But the actual fact is that of persons exposed as was Slattery, the proportion of those attacked was from five to eight times as great as the proportion of those not so exposed. This ratio is so great that it cannot be said that the commission was not justified in concluding from it, in connection with the other facts, that Slattery's illness was due to the peculiar exposure of his employment. Its conclusion is the more justified by the fact that it coincides with the con-

clusions of most of the physicians who testified. Their opinions upon a point of this character are entitled to consideration, since it is a part of their vocation to observe diseases and how they spread, and to draw conclusions from their observations.

Award affirmed.

Shaw, J., Lawlor, J., Lennon, J., Wilbur, J., Sloane, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.