[Civ. No. 4159. Third Appellate District.—August 20, 1930.]

CLIFFORD HUFSTETLER, Petitioner, v. THE DEPART-MENT OF INDUSTRIAL RELATIONS, THE STATE COMPENSATION INSURANCE FUND et al., Re-spondents.

R. R. Fowler, Francis O. Hoover and Robert B. Fowler for Petitioner.

Edward O. Allen for Respondents.

FINCH, P. J.—The petitioner seeks the annulment of an order of the Industrial Accident Commission denying compensation for injuries sustained by him in an automobile accident. The Commission found that, at the time of the accident, the petitioner was employed as a salesman by Weber & Beckett, whose insurance carrier was the State Compensation Insurance Fund, "all of whom were then subject to the provisions of the Workmen's Compensation Insurance and Safety Act of 1917" [Stats. 1917, p. 831], but that "the evidence does not establish as a fact that the applicant received an injury arising out of and in the course of his said employment." It appears without dispute that the petitioner was seriously injured in the accident. He

contends that the evidence establishes, without conflict, that his injuries arose out of and in the course of his employment. It must be conceded that there is no direct conflict in the evidence on the issue in controversy, and the question is whether the Commission was bound to accept as true certain testimony given by the petitioner.

Weber & Beckett were engaged in the business of selling automobiles in the city of Modesto. The petitioner was one of their salesmen. While he was guaranteed a minimum monthly salary, it appears that he was allowed a commission on the sales he made. Weber & Beckett did not direct his activities, but he was required to report his "prospects." He had listed a man of the name of Mullen as such a "prospect" and had endeavored to interest him in the purchase of an automobile. Mullen was employed in office work at Hetch Hetchy Junction, about forty miles from Modesto, and, according to petitioner's testimony, "worked until four or five o'clock" in the afternoon, and "you couldn't see him when he was working at all." During the afternoon of July 31, 1929, Milton W. Terrill, representing a finance company, called at Weber & Beckett's place of business, but, learning that Beckett, the manager, was out of town, he went a few miles into the country with the petitioner, who there endeavored to sell an automobile to a man whose name neither could remember at the hearing before the Commission. After their return to Modesto they drove along the road toward Hetch Hetchy Junction to a point about twenty-three miles from Modesto, where, in rounding a curve on a grade, their automobile was wrecked and both of them were seriously injured. Both trips were made in Terrill's automobile, which was an inclosed car, that of the petitioner being an open roadster.

The petitioner testified that at the time of the accident he was on his way to Hetch Hetchy Junction for the purpose of endeavoring to sell an automobile to Mullen. In corroboration of such testimony Terrill testified that petitioner "wanted to make a trip to see a friend of his, a prospect of some sort"; that the petitioner said he wanted "to sell him an automobile, that was his idea. . . . I think it was some place I know past Oakdale, and I think it was Hetch Hetchy or Hetch Hetchy Junction"; and that the petitioner said

"he was going to make a sale if he had to go out to Hetch Hetchy Junction." Terrill also testified:

"I was very tired and let him (petitioner) drive my automobile. . . . Q. At what point did he take the wheel? A. I think he started to drive it. Q. You think he started to drive it. You think he drove all the time? A. Yes. . . . Q. At what time did you leave this ranch (referring to the trip in the afternoon)? A. It must have been approximately seven o'clock, maybe a little before that. . . . Q. Who was driving? A. Hufstetter drove back from this ranch. . . . Q. Who had driven out to the ranch? A. He did. . . . Q. Now, you are sure that Hufstetter was driving the car? A. Yes sir. Q. From the time you left Modesto up to the time of the accident? A. Yes sir. . . . Q. How long were you unconscious after the accident occurred? A. Until the next day. Q. Since you regained consciousness has your recollection been clear as to matters that immediately preceded the accident. A. No. Q. Then it is possible that you could be mistaken about who was driving the machine on the way from Modesto to the scene of the accident? A. It is possible, yes. I have been answering questions to the best of my ability. I might be wrong."

The petitioner testified that Terrill was driving "at all times" from the time they "left Modesto until the time of the accident"; that he recalls "clearly incidents occurring shortly before the accident. . . . I don't remember of driving his car at all. . . . I have no recollection of driving his car whatever. I may have but I can't remember of ever driving his car. . . . I remember of leaving Modesto with him driving it. From then on I don't remember anything. . . . Q. How do you account for the fact that you don't remember anything? Do you mean that you don't remember anything after you left Modesto? A. Well, I can't remember things that happened three or four days before that. The doctor told me that my brain was mashed up with a potato masher, was the reason I didn't. Whether he knows or not, I don't know. Q. You mean as a result of the accident he told you it affected your recollection of events occurring immediately preceding the accident. A. Yes sir. . . . Q. Now do you remember this other trip that Mr. Terrill told about out in the country to see the other prospect? A. No, I have a faint recollection of going out

to see someone. I can't figure it out. I can't remember who it was or anything about it. Q. Do you really remember whether you made such a trip or not? A. Well, I have a faint recollection— Q. Your impression is you made such a trip? A. That I made a trip.''

The only evidence tending to show that, at the time of the accident, the petitioner was on his way to Hetch Hetchy Junction to interview Mullen is his own testimony to that effect, corroborated by that of Terrill. Such evidence is greatly weakened by the petitioner's statement that he could not ''remember things that happened three or four days before'' the accident and Terrill's statement that his recollection was not ''clear as to matters that immediately preceded the accident.'' In addition to their own beliefs as to the unreliability of their recollections, there are contradictions and inconsistencies in their testimony. It is unusual that any person would be uncertain as to whether he was driving an automobile at the time of a serious accident in connection with it. The hour at which petitioner left Modesto was unusual if his purpose was as stated by him. Terrill testified that they left Modesto at 7:45 in the evening; that the petitioner said they could eat at the place to which they ''were going or on the way some place'' and that it wouldn't take us very long and that I would be back by the time Beckett returned and that would be about 9:30.'' The petitioner testified that it required ''around an hour and a half'' to drive from Modesto to Hetch Hetchy Junction. Assuming that it would require the same length of time to make the return trip, it is apparent that they could not have reached Modesto on their return until long after 9:30, even allowing no time to eat or to interview Mullen. These inconsistencies give rise to the question whether it was the real intention to go to Hetch Hetchy Junction or only to some nearer place. The foregoing circumstances are not such as to require the commission to disbelieve petitioner's testimony to the effect that he was on his way to Hetch Hetchy Junction at the time of the accident, but the question here is whether those circumstances are of sufficient weight to warrant such disbelief.

[1] ''While it is a general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof

of the fact, this rule has its exceptions, and the most positive testimony may be contradicted by the circumstances in evidence in connection with the matter which satisfy the court of its falsity." (*Caldwell* v. *Weiner*, 203 Cal. 543, 546 [264 Pac. 1100, 1101]; *Michener* v. *Hutton*, 203 Cal. 604, 612 [59 A. L. R. 480, 265 Pac. 238].)

"As it is within the province of the trial court to determine what credit and weight shall be given to the testimony, the appellate court cannot control a finding or conclusion denying credence, unless it appears that there are no matters or circumstances which at all impair the accuracy of the testimony." (10 Cal. Jur. 1145.)

 A decision of the Commission cannot be disturbed on the ground of insufficiency of the evidence unless it can be said "that a reasonable man could not reach the conclusion which the commission did." (*San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273, 283 [191 Pac. 26, 29].)

 Under the circumstances stated it cannot be said that the Commission acted arbitrarily in denying credence to the testimony in question or that its decision is unreasonable.

The order denying compensation is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.